Hear ye, hear ye, this Honorable Appellate Court for the Second District is now open. The Honorable Justice Mary S. Shostak presiding, along with Justice Donald C. Hudson and Justice Joseph E. Burkett. The case is number 220-0095, Rachel Kalisz, plaintiff-appellee, versus Board of Education of Kildeer Countryside Community Consolidated School District 96, defendant-appellant. Arguing for the appellant, M. Neal Smith. Arguing for the appellee, Joshua Feil. May it please the court, my name is Neal Smith and I represent Kildeer Countryside Community Consolidated School District 96, the appellant in this matter. In June 2018, the school district terminated the employment of teacher Rachel Kalisz for cause and then over the course of a two-day administrative trial, the school district proved by a preponderance of the evidence that cause to terminate did exist. The independent hearing officer who ruled in the school district's favor was selected by both parties, possessed all the credentials of experience mandated by the Illinois State Board of Education. It was the independent hearing officer who heard the live testimony from all the witnesses and judged their credibility and it was the independent hearing officer that authored and issued a 32-page opinion finding that the school district had cause to dismiss Kalisz. What he also found is that in May 2016, the school board issued Kalisz a notice to remedy in connection with her dishonesty and lack of cooperation with the district investigation. What year did you say that was? That was May 2016 when the school board issued Kalisz a notice to remedy and that was in connection with earlier in spring 2016, the district became aware of a DCFS investigation into allegations of child abuse perpetrated by Kalisz involving her own children. For the protection of students, the district conducted its own due diligence investigation into Kalisz only to be stymied by her dishonesty and lack of cooperation. The 2016 notice of remedy notified Kalisz that she was to exercise appropriate and professional judgment and conduct herself in a professional manner. Professional and appropriate conduct is a term that is specifically delineated in the school district's policy manual and the policy manual adopts the code of ethics for Illinois educators from the Illinois Administrative Code. Professionalism specifically means demonstrating integrity, honesty, and being considerate and cooperative. And also at the heart of professionalism, that concept, as set out in the code of ethics for Illinois educators, is a teacher's responsibility to students, responsibility through commitment to teaching, promoting and implementing learning environments that is accessible to students and is designed to enable students to achieve in academics and society. So despite that 2016 notice to remedy, less than two years later, during the 2017-2018 school year, the school board was again having serious problems with professional judgment of Kalisz. This time it was in connection with her decisions to leave the classroom time and again. She left students unattended in the classroom while teaching by herself at least once per week. She left her fourth period class for five to ten minutes on one occasion for nothing more than to look at decorations in the hallway. She left her class during co-teaching for 20 to 25 minutes to make a phone call regarding a CPAP machine. She left her class during co-teaching for 15 to 20 minutes to speak with a colleague. She left her class during co-teaching for 10 to 15 minutes to smoke a cigarette because she was frustrated. And then she left her co-teaching class while students were present. She was gone for 30 to 40 minutes while she made a phone call to an airline to reschedule her flight status. So during the 2017-2018 school year, she left her co-teaching classroom at least 15 times. And there was even one occasion, it was the airline incident, where she even acknowledged her own unprofessionalism in real time, saying she knew what she was doing was unprofessional. She knew. And even on one occasion where she had stomach issues and needed to leave, she exhibited utter unprofessionalism by not even notifying the administration that she was leaving and not making sure the administration could arrange for a substitute. A critical part of professionalism is responsibility to students. And how can Kalish be professional if she's not even in the classroom? After the hearing and all the evidence at the trial, in his 32-page opinion, the hearing officer found the incidents in which Kalish chose to leave the classroom for personal  Leaving the classroom hurt her students, her most important professional responsibility, said the hearing officer, and burdened her co-teacher, making it difficult for the co-teacher to attend to her responsibilities to the students. The hearing officer also found that the manner in which Kalish left her class for her intestinal distress demonstrated a lack of professional judgment because she failed to notify the Now, critically, before the hearing officer, he acknowledged was the question of whether the proven 2017-2008 conduct also violated the 2016 notice of remedial, the notice to remedy. And it was clear to the hearing officer that it did. The school board adopted the hearing officer's opinion in full, and it became the final administrative decision in this matter. The appellate court reviews the administrative decision, not the decision of the circuit court. The administrative decision is entitled to substantial deference under the standard of review. That question being, are you left with a definite and firm conviction that a mistake has been made and that the school board's decision finding there was cause to discharge Kalish was arbitrary, unreasonable, or unrelated to the requirements of service? Now, at the trial court level, the trial court reversed the hearing officer's decision, and in so doing, the trial court created a new rule called the specific conduct warning rule. And it's got no basis in Illinois law. The specific conduct warning rule that Kalish, of course, now runs with and advocates for, if it became established law, would mean that a school district could only terminate a teacher in a rare instance where the teacher's conduct in the dismissal charges exactly matches the teacher's conduct in a previously issued notice to remedy. If that was the law, it would have severe impacts on the ability of school districts to dismiss teachers and to offer the high-quality education to students that it's bound and charged to do. How can the school district satisfy its responsibility to students to provide high-quality learning environment, if it can't even dismiss a teacher who refuses to teach, who refuses to go to class? If the legislature had wanted districts to be so hamstrung in such a severe way, it surely would have been more specific about it. And the legislature knew how to be more specific about it, as demonstrated in the very teacher tenure law, where the notice of remedy is located. For example, the legislature, if it intended a specific conduct warning rule, it could have done so by using the words conduct or bill of particulars. It did so elsewhere in the teacher tenure law, so it knew how to use those words. But it didn't do it. It used the word causes instead. And notification of causes in the notice to remedy is precisely what the school district did in this case. It notified Kalish of a specific underlying problem. And in this case, it was the failure to exercise appropriate and professional judgment. Again, appropriate and professional judgment being concepts specifically delineated in the school board's policy manual. Now the trial court created this new specific conduct warning rule concept because it was concerned with fairness, or what it perceived to be a fairness issue. And specifically, the trial court was worried that a teacher under a notice of remedy could later be subject to dismissal for minor and trivial violations. The trial court was wrong to have had these worries for three reasons. First, the independent hearing officer function and the trial that the hearing officer provides are a bulwark against the unfairness because the hearing officer decides on a case-by-case basis, as he did here, after seeing the evidence and hearing the live witnesses, whether the conduct in the dismissal charge is proven and whether the conduct violates an earlier issued notice to remedy. Second, subsequent conduct must be a material breach of the previously issued notice to remedy. And this is the Supreme Court Beggs case here, where the court held that a teacher spending a few minutes at the beginning of the class determining where a substitute teacher left off was not a material breach of the notice provision. And number three, there must be a logical nexus between the teacher's conduct at issue and the dismissal charges and the teacher's fitness to perform as a teacher. And the recent Burgess case is the example here. And so because of these already existing protections, the trial court was wrong to rewrite the law to create a specific conduct warning rule. In conclusion, a considerable due process was given to Kalish and the independent hearing officer determined that the school district had caused a dismissal. He heard the witnesses. He has the experience and the credentials mandated by the State Board of Education. His decision should not just be cast aside as the trial court did. And at the heart of the teacher tenure law is to improve Illinois schools by helping to retain quality teachers. And the purpose is not to protect teachers from dismissal at all costs. And so we ask that you affirm the decision of the school board to dismiss Kalish. And at this time, I'm happy to address any questions the panel may have. Thank you, Mr. Smith. Justice Hudson, do you have any questions? Yes. Good morning, Mr. Smith. Good morning. You just referenced the Burgess v. Illinois State Board of Education case, correct? Correct. In that case, didn't the appellate court reverse the school board's dismissal order where the connected issue was not the type of conduct that led to the notice of remedy? Isn't that precisely what the plaintiff is arguing in this case? That the 2016 notice to remedy was based upon failing to cooperate with the board's investigation of the CFS case and giving untruthful statements? Did it have anything to do with leaving a classroom early? In the Burgess case? Yes. How did the Burgess case help you? Yes. Well, the Burgess case actually helps us because it's this logical nexus component. And that was the real holding of the Burgess case, is the third district said there was no logical nexus between Burgess's actions that led to his dismissal and his fitness to perform as a teacher. And that still is the case here. And that's one of the protections here, is that there must be a logical nexus between the teacher's conduct at issue and the dismissal charges and the teacher's fitness to perform as a teacher. That was the holding of the Burgess case. That's why the court reversed. And that Burgess case, of course, there was no logical nexus because Burgess, the conduct that was at issue and the dismissal charges was a closed-door union meeting, not a school function or not his teaching. Well, let me ask you this. The plaintiff is arguing the 2016 notice to remedy could not serve as a basis because that was related to the DCFS investigation. It had nothing to do with leaving a classroom. Is that correct? The 2016 notice of remedy did not, right, it was issued because of, in connection with that DCFS investigation. So the issue that led to the warning in 2016 was not the basis for seeking dismissal. That conduct, in this case, it was a separate issue, was leaving the classroom repeatedly early was the allegation. So the argument is, how will she give a notice that leaving the classroom late could lead to her dismissal based on the earlier 2016 action? So the conduct wasn't exactly the same, but the causes were. The underlying causes were the same, and that's her lack of professionalism, professionalism being a specifically delineated concept internally in the school board's policy manual. So the conduct isn't the same, but the statute doesn't say we have to say, the statute doesn't say the conduct has to be the same from one time to the next. The causes have to be the same, and the underlying causes, the underlying flaw in Mrs. Kalish's character is her lack of professionalism. Again, professionalism being a specifically delineated term. How is this case distinguishable from the Supreme Court's holding in the Beggs case? So in Beggs, Beggs involves another one of those protections, those already existing protections that I discussed. Beggs, the holding in Beggs was a teacher can't be terminated for a minor or understandable and minor breach of a previously issued notice to remedy. So in Beggs, there was a technical, the court recognized a technical violation of the previously issued notice to remedy, but then it said, even though there's a technical violation, it still has to be material, it still has to be a material breach, not an understandable and minor breach. And in that case, it was minor. It was minor because she spent five minutes at the beginning of the class trying to determine where the substitute teacher had left off. So are you saying that the requirements to exercise professional judgment follow procedures, then anything that follows from that would be grounds for dismissal, even though the conduct at issue was not specifically warned about? Is that your position? That's right. The conduct does not have to be the same from one situation to the next. It has to be, it's the underlying causes. And so even if the conduct is not the same, and, you know, there's another built-in protection here, and that's the independent hearing officer function. The independent hearing officer is, as I said, a bulwark between a school district who might try to abuse that. The hearing officer stands in as the person who decides whether the notice to remedy and the subsequent conduct or the subsequent conduct at issue emanate from the same cause. Here he decided that it did. Well, let me ask you specifically, how does the deficiencies, how did the leaving the deficiencies with not cooperating with DCFS, what's the connection between that issue and the earlier issue? Two things. One key part of it is the cooperation element, which, again, is a term specifically stated in the school district's policy manual, and it talks about professionalism, is cooperation. You're not cooperating with the school, you're not cooperating with your fellow teachers. But more importantly, it's student-centric. Professionalism means responsibility to students. And in both cases, the underlying issue was, is she a fit, does she have the fitness to be responsible, fitness to be a teacher who's responsible to students? So are you saying... It's difficult because I understand your argument, and it has some logical appeal, but carrying this thought to its logical extension, you're saying professionalism, there was a warning about using professional judgment procedures. I mean, what if a teacher all of a sudden starts up, shows up wearing inappropriate clothing? Could the board then fire her based upon an original warning letter that had nothing to do with wearing inappropriate clothing, but yet said exercise professional judgment? So could the teacher be fired for that because school board thinks her clothing is inappropriate, although that was never specifically warned against? I think that would be a fact issue for the independent hearing officer who has mandated training for the State Board of Education. It might be. It might be. But that's precisely the kind of fact issue that an independent hearing officer would determine. And so I think we can, you know, we can take comfort in the fact that that independent hearing officer is standing in to make those factual determinations on a case-by-case basis. All right. Thank you, Mr. Smith. That's all I have. Thank you. Justice Burkett, any questions for Mr. Smith? Thank you, Justice Shostak. What is our standard of review, Mr. Smith? So the standard of review, and again, you're reviewing the administrative decision. For facts, it's the manifest way to the evidence standard. And then applying those facts to law is the clearly erroneous standard of review. And that's asking, are you left with a definite and firm conviction that a mistake has been made by the school board? Finding that there was a cause of discharge, Kalish. Here, we're interpreting a statute, correct? We're interpreting section 24-12D1. And what the meaning of the words, warning and writing stating specifically the causes, correct? That would be de novo review, correct? Yes. There is an element of de novo review when you're just, if you're just looking at the statute in isolation. If you're applying facts to that statute, and then it's the clearly erroneous standard. And the notice that was provided in 2016 had to do with dishonesty, correct? The conduct was dishonest conduct. There was no dishonesty. The causes, I'm sorry, the conduct was dishonest conduct. The causes, the underlying problem with Ms. Kalish was her professionalism and lack of it. During the hearing, was there any testimony on the impact of student performance on her absences? Or was that even relevant? There generally wasn't an impact on student safety. I will say that. But safety is just one part of a school. At minimum, you want to have student safety. But here, her actions kind of destroyed this co-teaching model. You have two teachers in this classroom. One is not the subject, the certified teacher to teach the subject matter. That's Kalish. She's certified to teach the subject matter. She has a co-teacher who's not certified to teach that subject matter. She's there to assist students with, for instance, ESL students or students that require additional assistance for reading. That's her job in the classroom. But Kalish kind of took advantage of this co-teaching model, knowing she could leave her co-teacher there, probably not compromise student safety. But what it was doing was destroying this co-teaching model. You didn't have the subject matter teacher in the classroom. And when you don't have a subject matter teacher in the classroom, I don't think there's any question that students aren't getting, aren't being offered that level of educational value, which, again, is part of professionalism. Until Ms. Yu brought this issue to the attention of the board and to the principal, was there any intervention to tell Kalish that her absences from the classroom were problematic? There was, I think it was at a teacher-to-teacher level. It was certainly, it was certainly Yu was bringing that concern, you know, was bringing that concern to Kalish. But again, it wasn't brought to the administration's attention. Thank you. That's all I have. Thank you so much, Justice Burkett. Following up on Justice Burkett's question, the fact that she was not told about these violations, if you will, were they irremediable? Is that what was found? I mean, she was not given the opportunity to remedy, was she? She was given, they, so there was a finding that these, and the conduct in 2017 to 2018 was found to be remedial, as it had to be. That finding was required by the hearing officer. He was required to make that finding. And he did find that the conduct was remedial. However, she was given a chance in 2016 to remediate that conduct. But, but the conduct that was the violation of 2016 was not the same as was in 2017, 2018. That, that's true. The conduct was not the same, but the statute says causes, and causes is different. Causes is broader. If it's not brought to her attention, how does she, how does she remedy this situation? How is she given the opportunity to remediate? Well, Judge, it is brought to her attention. It is brought to her attention. The underlying causes. Right. But nobody said to her, and you have listed a long litany of things that she did. She went to smoke a cigarette. She went to look at Christmas decorations. She left early one day because she had an intestinal problem. She went to make an airline reservation. Were any of these brought to her attention and said, you can't do these things any further? Or were they not? That, I mean, were they, they weren't brought to the attention of the administration until later. And so, but these are. Go ahead. I'm sorry, sir. And I was going to say, and these are things that. These are professionalism things. Things she should know about. And things that the hearing officer, in his experience, said. This. This is professionalism. Professionalism, and I don't want to, you know, it's not, it's not so, it's not an amorphous concept here. It's in the school policy. Professionalism. I understand that. I think that Justice Hudson asked you to distinguish BEGS or talk to you about BEGS. And Justice Burkett asked you about the standard of review. I think BEGS kind of sets out a standard of review. They found that it was unreasonable and unrelated. They found it was arbitrary because it was unreasonable and unrelated to the requirements of service. And they also said that only a clear immaterial breach of the warning notice that was casually related to the past conduct would support her dismissal. How do we have anything that is clear immaterial breach of that 2016 behavior? I mean, it's so broad, isn't it? Again, I. Technical violation as BEGS? I think we're looking at as if the statute says conduct, as if we have to list the conduct in 2016 and again compare it to the conduct in 2017 and 2018. That is not what the statute says. The statute does not say conduct. But the statute, I mean, and if the legislature had intended that, that specificity of notice that you identify this exact conduct, it could have said it. It would have because they do that in other places. The statute says in other places, you've got to have a bill of particulars. You've got to list specific conduct. It doesn't do that here. It says causes. And that's the statutory scheme we're left with. Right. The school code only allows to be fired for cause. But how does somebody have the opportunity to remedy a situation if they aren't advised or informed in order to remedy? That's the issue. That's the issue I am having. And I know what you're saying. You're saying that that broad language was enough to fire her for cause. And Judge Ortiz says what I'm kind of trying to follow here is how does she know? How is it specific enough for her to know that these things that she was doing, that were many, were never brought to her attention? Well, you know, with this conduct with Kalish, she has to be presumed to know this is unprofessional conduct. Some things you don't have to be told. Yes. But she was, and again, we've got the teacher's tenure law that we've got and it says causes. And that's not conduct. That's not conduct. And to the extent that that seemed unfair to the trial court judge, what I've tried to emphasize is it's not unfair because of those three big reasons that I talked about. Because you've got a hearing officer standing in as a bulwark to any kind of school district that may try and abuse the system. Because you've got the legal requirement that you can't be terminated for later minor breaches. And because number three, there has to be a logical nexus to your, there has to be that logical nexus between the teacher's conduct issue and the dismissal charges. And how, what is that, that's my question. What is that, that nexus in this case? That is my issue. Okay, so the logical nexus requirement is there must be a logical nexus between the teacher's conduct at issue and the dismissal charges. That's the 2017-2018 charges. And the teacher's fitness to perform as a teacher. And the nexus there is that if you're leaving the classroom all the time, that shows that you're unprofessional and unfit to perform as a teacher. You're not even in the classroom. You're taking advantage of this co-teaching model, leaving the burden on your co-teacher. You're the certified teacher, the certified content teacher, and you're not even there. So that's the nexus. That's the nexus. So I appreciate where you're going, but I'm still having a problem with the Supreme Court's decision in the Beggs case and how we basically ignore that to rule the way you want us to in this case. I'm definitely not asking you to ignore the Beggs case. In fact, I cite the Beggs case to support my position. And by the way, the Beggs case, the hearing officer ruled against the school. The school then turned around and said, we don't like that. We're dismissing her anyway. And the court ultimately said, we're upholding the hearing officer. He or she was the one who heard the facts, heard the witnesses. We're going with the hearing officer. And I'm asking you to do the exact same thing here. Go with the hearing officer. Go with the hearing officer who heard the facts here, applied the facts to law, and determined the school district had cause to dismiss Kalish. And again, what the Beggs case is saying is that there was a technical violation of the notice of remedy. There was a notice of remedy, and the teacher later violated it. The Supreme Court said, yeah, she violated it. But it was minor. It was minor. Here, it wasn't a minor violation. She was gone from the classroom all the time. And for personal reasons. So the Beggs case is saying that even when there's a technical violation of the previously issued notice to remedy, it still has to be something more than just a minor or understandable breach. Well, I read Beggs to say they really need to be put on notice, too. I know there's some language about that, but I don't think that's the central part of it. I don't think that's the central part of it. Because that language about notice is, I mean, they use the term causally related. I mean, I think that's the notice type language you're related to. Discharge has to be causally related. But that relates back to the 10-year law that says the notice to remedy has to specifically identify the causes, not the conduct. And we notified her about her need to be more professional. Again, professional being something that is delineated in the school policies. A concept, a term that's delineated in the school policies. And she wasn't professional. And some things, especially like leaving the classroom in the manner she did, you know, she has to be presumed to know that's unprofessional. Do you think that this conduct, had she been notified specifically of this conduct, that it was irremediable? So her conduct in 27-2018, do I think it was irremediable? Yes. I think that she, I think that you said you, no, I think it was probably remediable. And in fact, we acknowledged it was remediable. But, you know, how, you know, part of the reason that this 10-year law allows you to state the causes, as opposed to underlying conduct, is because you can never be quite totally precise about listing these things. If next year Kalish, instead of leaving the classroom, takes a nap during class, that's the kind of thing where she said, well, I wasn't leaving the classroom. This time I was taking a nap. But it's still unprofessional. That's a little more related than just quote unquote broad unprofessional. But, well, but that's the, you know, the school code says causes, not conduct. And, you know, Your Honor, you're saying that it's related, but that's precisely the reason why we have an independent hearing officer who is a bulwark and is making those determinations and saying, you know, this is cause, or this isn't cause. He's that person that's standing in to be fair, to make sure there's fairness. Okay. I have no further questions. Thank you so much. Okay. Thank you, Your Honor. Thank you, Your Honor. Appellant. Good morning, Your Honors. This is Josh Feil, arguing on behalf of the appellant, the teacher, Rachel Kalish, in this matter, if it will please the court. The issue raised on appeal, according to the district in its appellate brief, is whether the circuit court erred in reversing the district's decision to dismiss Miss Kalish. So, this court is reviewing the circuit court decision, while it's also reviewing the hearing officer's decision, but I believe that the district misleads the court a little when it says that it's not reviewing the circuit court decision. Most importantly, the district has repeatedly admitted that the conduct in 2017-2018 of leaving the classroom was remediable and that it would not have resulted in discharge, but for that prior notice to remedy. Also, a significant admission by the district is that the circuit court correctly applied the erroneous standard of review. The district's mistake here is that it seems to think that the court failed to provide it with some extra level of deference that it simply was not entitled to under the clearly erroneous standard. I'd like to focus or respond to the district's focus on the use of the word causes over the word conduct in the school code. That's just simply without merit for two important reasons. First, it's utterly disingenuous for the district to even make that argument because the district itself uses the word conduct throughout the 2016 notice to remedy. If you look at that notice, it says the following are the conduct issues which, if repeated, will result in charges for dismissal. It then says you are directed to immediately cease conduct as specified in this notice. It goes on to say your failure to remedy your unprofessional, unsatisfactory, and insubordinate conduct, as described herein, will result in charges for dismissal. Second, and perhaps more importantly, the Supreme Court in Beggs clearly was focused on the teacher's conduct when it interpreted and applied section 24-12D of the school code. The Supreme Court there, in finding that Beggs did not materially breach her notice to remedy, the court stated the board's concerns in the remedial warning seemed to be spawned from the plaintiff's late arrivals and lack of lesson plans. The court then stated, thus, it is puzzling why the requirement to use classroom time effectively was even included in the notice unless it was related entirely to plaintiff's late arrivals. Obviously, arriving late, failing to have lesson plans, and using classroom time are examples of conduct. They're acts or failures to act in a certain way. Another synonym would be behaviors. The court in Beggs then concluded that that conduct or act of ineffective teaching, which was the trigger for dismissal in that case, evaporates as a cause for dismissal because Beggs was on time on the date in question. And thus, the conduct which triggered dismissal was not causally related to the conduct of the arrival, which was the subject of the prior notice. The circuit court here correctly applied that same logic. The broad directives to exercise appropriate professional judgment and to conduct yourself in a professional manner, which were contained in Kalish's 2016 notice to remedy, must have been included only as they relate to her alleged dishonesty, which was the sole and specific subject of that prior notice. And just as the Supreme Court in Beggs found, the circuit court here correctly saw through the district's facade and concluded that leaving the classroom on five occasions in 2017-2018, which is what triggered the dismissal, evaporates as a cause for dismissal because that conduct is completely unrelated to the conduct of alleged dishonesty, which is what spawned the 2016 notice to remedy. It's interesting here that it seems that the district would prefer to re-litigate the underlying merits or the underlying conduct which caused Ms. Kalish's dismissal in 2018. It seems to me to be an obvious and misguided attempt to undo the district's fatal admission that that conduct was otherwise unmediable. As noted, and as the district admitted, this case presents a mixed question of fact and law, which is reviewed under the clearly erroneous standard. The facts here are undisputed. During the 2017-2018 school year, Ms. Kalish left her classroom during her co-taught class on five specific occasions. That is specifically what caused the district to move for dismissal in 2018. It's further undisputed that the district had never previously warned Kalish that she could face discipline or discharge for leaving the classroom as she did until after it began its investigation in the spring of 2018. It's further admitted by the district that the district had no written rules or policies which specifically prohibited what Kalish did. And the district further admitted that other teachers throughout the district had similarly left their classrooms on occasion without facing discipline. And again, most importantly, the district has admitted that that conduct was removable and would not have been the cause for immediate dismissal on its own. The district chose to move for immediate dismissal solely due to the fact that Kalish had this prior notice to remedy from 2016, which the district admitted was issued to Kalish specifically for alleged dishonesty during an unrelated district investigation, and that the district further admitted that that notice to remedy had nothing to do with Kalish leaving the classroom, and that her dismissal in 2018 had nothing to do with any alleged dishonesty or lack of cooperation during the district's 2018 investigation. Therefore, the sole question before this court on appeal is whether that admittedly remediable and unrelated behavior of leaving the classroom was sufficiently similar and causally related to her alleged dishonesty in 2016, such that it would constitute a material breach of that prior notice to remedy. The court's review here is twofold. The first step is to determine whether it was actually similar or causally related. Obviously, the act of a teacher leaving a classroom on five occasions in one year is not at all factually similar, let alone causally related to the act of alleged dishonesty. Thus, the circuit court here correctly concluded that the hearing officer's determination that it was causally related was erroneous as a matter of fact and against the manifest weight of the evidence. The circuit court noted that the opposite conclusion was clearly evident. For the second step, the court then applies the established facts to the existing law to determine whether the decision to dismiss Kalish for unrelated and admittedly remediable conduct was arbitrary or unreasonable. Again here, the circuit court correctly applied the laws established in Beggs, which held that a district does act arbitrarily or unreasonably if it discharges a tenured teacher for remediable conduct that is not causally related to the teacher's past deficiencies. It uses the word deficiencies, which again indicates some sort of actual conduct or act that was a deficient act. So, in making the argument that the district seeks to make, this idea that the circuit court established some specific conduct warning rule, that's simply not the case. The specific warning rule is explicitly set forth in section 24-12D of the school code. The fact that it uses causes versus conduct in that particular provision doesn't change the propriety of the circuit court's ruling in this case. The circuit court correctly applied that statutory language and the Illinois Supreme Court's interpretation of that language and found that it was arbitrary for the district to dismiss a teacher for completely unrelated, otherwise remediable conduct. The position that the district is taking here basically would give any school district carte blanche to fire a tenured teacher for any reason, so long as there was a prior notice to remedy that contained some very vague, broad, catch-all directives like act professionally, follow all policies, exercise appropriate judgment, et cetera, et cetera. Clearly, that's not what the legislator intended when they enacted section 24-12D of the school code. The courts in Illinois have long recognized that the tenured teacher law was enacted primarily for the protection of Illinois teachers and that it's intended to afford teachers the ability to pursue a career free from arbitrary hiring and firing, such as that which occurred here. I guess I'll leave it with that and open up for your questions now. Thank you. Thank you. Justice Hudson. Yes. Counsel, I wanted to ask you some questions in the context of what goes on in the real world. I think, admittedly, the notice back originally was related to the DCFS investigation issues of dishonesty. We agree on that, correct? Correct. It was alleged dishonesty. Right. But then the notice also, the remedial note warning, required the plaintiff to exercise appropriate, quote-unquote, and professional judgment, conduct herself in a professional manner, and to follow all the board's policies, procedures, and practices. That was part of the warning, correct? Correct. And it wasn't more specific than that. But as I'm listening to the arguments, I'm struck by this thought. I mean, how far, is that language not important? I mean, can we convey a situation, may seem a little bit of a stretch, where a teacher shows up for work late constantly and gets the warning about that. And then the teacher does, as was alleged here, is leaving the classroom during the day and leaving the other teacher alone, and then would get a warning on that. And then, so the next time the teacher starts leaving work early, is it appropriate then for the teacher to defend on the basis where the dismissal is sought? Hey, wait a minute. This isn't leaving the classroom during the day. This isn't arriving late. I'm just leaving early. Nobody warned me about that. What's the school board to do in that case? It's a fair question, and I think that the Beggs case provides us the answer to that question, where it interprets what it means to be causally related to the past deficiencies. And so, certainly, if a hearing officer found that leaving early was causally related to arriving late at the hearing, in that hypothetical, I don't think that I would take issue with that, as we do in this case, where alleged dishonesty is obviously very factually dissimilar from occasionally stepping away from the classroom. And the Beggs case says the directives that are in the notice to remedy, there's no prohibition against having a broad directive in a notice to remedy. However, those broad directives have to be narrowly tailored to the specific conduct which triggered or spawned that prior notice, so that if the district relies on it for some subsequent discipline, that subsequent discipline has to be, or dismissal, has to be, again, causally related to that prior conduct. And in that case, the late arrivals and the alleged misuse of classroom time, the Supreme Court found that those were not causally related. All right, that's all I have. Thank you. Justice Burkett. Thank you, Justice Shastick. Good morning, Mr. Feild. In the notice to remedy, there was a notice that any behavior that disrupts the educational process could lead to dismissal, correct? Yes. I don't know if those exact words were used, but I do believe something along those lines, yes. I'm reading from your brief, any conduct that disrupts the educational process. Would you agree that leaving early on repeated occasions would disrupt the educational process? Yes, I would. And we did, Ms. Kalish has not, there was no dispute. She did admit the conduct that she engaged in, in 2017, 2018. The issue here is that the district admitted that that was remediable. And so, therefore, the question is simply whether that remedial conduct was causally related to the alleged dishonesty. Now, the language that you're quoting from the original notice could encompass any, you know, wide spectrum of specific conduct that could disrupt the educational process. I believe Justice Hudson used the example of a teacher wearing inappropriate clothing. That could disrupt the educational process. Go ahead. I'm sorry. So, again, relying on the Beggs case and interpreting what those, that language in a notice to remedy needs to mean in order for it to be used for subsequent discipline, it would have to be, in this case, anything that disrupts the educational process as it relates to dishonesty or non-cooperation with the district in an investigation. It doesn't broadly encompass any potential act or behavior or conduct. Well, there are certain types of conduct. Wouldn't you agree that, you know, a teacher acts in local parenthesis. You are in the place of the parent. You're abandoning your students and leaving early. Why would you even need a warning about that? Well, again, first of all, the district admitted that it was remedial conduct. The evidence on the underlying record was not that she abandoned the students or anything like that. She had some lapses in judgment on five specific occasions where she stepped away from the Kotal classroom. I believe it was you, Justice Burkett, that asked if there was evidence about the actual disruption to the classroom, and there was quite a bit of evidence at the administrative hearing that there was no disruption to the classroom in any of these specific instances. All of the students completed their coursework for the day. No one got hurt. There were no incidents. And everyone graduated the, I believe they were in third grade at the end of the year. So the facts simply don't support the assumption that what she did actually did disrupt the classroom. Good. Thank you. That's all I have, Justice Shostak. Thank you very much. Mr. Fayo, I think both your opponent and Justice Kapp bring up a good point. It's clear that the conduct was not proper. Is that enough to have this dismissal fall under the 2016 admonition? I'm sorry, you kind of broke up. Can you repeat that? I missed part of what you said. Yeah. Is the fact that this behavior is clearly not something that is in line with the way a teacher should conduct themselves. It's obvious. Is that enough for this behavior to fall under the 2016 admonition? And why not? Well, we would argue it's not as far as being the cause for dismissal. Again, you're absolutely correct. The teacher admits that it was not proper behavior. And the argument that we and the union and the teacher are making here is that this is other remediable conduct unrelated to the prior notice to remedy, which should be the subject of its own separate notice to remedy. So that Ms. Kalish would be specifically warned, have an opportunity to remedy this conduct. And then if she does continue to engage in it, then the district absolutely would be free to dismiss her for that. One thing that is perhaps worth mentioning is it wasn't raised on appeal, but the teacher and the union took issue with the entire 2016 investigation and notice to remedy from the start. That hasn't been raised on appeal here, but that sort of adds credence  cannot be used as a basis for this completely unrelated conduct. We took the position that that notice should have never been issued in the first place. Okay, thank you. Counselor, you have an opportunity for rebuttal for five minutes. Thank you. At the end of the day, counsel's argument is this. You can never dismiss a teacher unless her later bad conduct is, but basically the exact same is the conduct in the notice to remedy. And this, I mean, quite frankly, this would be a horrible outcome and a detriment to a good school operation. Instead, what I'm saying is that you've got an independent hearing officer ready, who's trained, trained by the State Board of Education and ready to make that factual, to apply the facts of the law and make that factual determination in each and every case about whether the causes from one instance to the next are the same. You've got that built in to the statutory scheme. And furthermore, you've got the other two protections. You can't, subsequent conduct must be a material breach of a previously issued notice to remedy, as opposed to an understandable and minor breach. And there must be a logical nexus between the teacher's conduct and issue of the dismissal charges and the teacher's fitness to perform as a teacher. You've got those three protections in there. So we don't have to, we don't have to put in this rule that counsel is saying that you can never dismiss a teacher unless their later bad conduct is the exact same. Instead, we can do, instead you can affirm the school board, in this case, just as the hearing officer found, that the hearing officer found that her conduct, it was appropriate to dismiss. We can uphold him and be true to the statutory scheme. And just one other thing I want to make clear about the statutory scheme is that while the 2017 conduct is remedial, the previously issued notices of remedy make otherwise remedial conduct irremediable. That's the statutory scheme. But again, we don't have to go with counsel saying, we don't have to go with counsel's position that you can never dismiss a teacher unless her later bad conduct is the exact same. We just don't have to do it. We've got protections in here. Is he really saying that though? Is he really saying the exact same? I don't know that I'm hearing that. I think he is. I think he's, and that's why in our brief, I said he's advocating a specific conduct warning rule. And he does in his brief say the specific conduct, you've got to give her notice you've got to put her on notice of the specific conduct. And to me, that means he's saying that you can't dismiss a teacher unless her later conduct is the exact same as the previously issued notice to remedy. I'll end it with that and happy to answer any further questions. Any further questions, gentlemen? I have no further questions. I have no questions. Okay, there being no questions, I have none either. I want to thank you so much for your arguments here today. We will take the case under consideration and render a decision in due course. We are in recess. We're adjourned actually for the rest of the day. So thank you very much for your arguments, gentlemen. Happy holidays to you and stay safe. Happy holidays. Thank you. Bye bye. Bye bye.